JOHN FINLEY and DAWN FINLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Finley v. Commissioner
Docket Nos. 8967-74, 8466-76.
United States Tax Court
T.C. Memo 1978-421; 1978 Tax Ct. Memo LEXIS 91; 37 T.C.M. (CCH) 1745; T.C.M. (RIA) 78421; October 19, 1978, Filed Thomas W. Clarke, for the petitioners. Patrick E. Whelan, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINIOIN DRENNEN, Judge: In these consolidated cases respondent determined deficiencies and additions to tax as follows: Addition to tax Year
Deficiency
under sec. 6651(a) [1]
1971
$ 10,675.57
1973
10,726.83
1,403.24
The questions presented for our resolution are: (1) Whether petitioners are entitled to deduct $ 36,257.46 in 1971 and $ 32,722.78 in 1973 as ordinary and necessary business expenses; (2) Whether petitioners are entitled to a dependency exemption for John Finley's mother for the taxable years at issue; (3) Whether petitioners are entitled to a deduction for interest expense in the amount of $ 978.60 for 1971; [2] and (4) Whether petitioners' failure to file a timely return for the taxable year 1973 was due to reasonable cause. *94 FINDINGS OF FACT Some of the facts have been stipulated and are so found. and Dawn) were husband and wife at all times pertinent Petitioners John and Dawn Finley (hereinafter John hereto. Their legal residence was 66 Millbrook Circle, Norwood, N.J., at the time the petitions for these cases were filed. They filed a joint Federal income tax return for the taxable year 1971 with the Director of Brookhaven Service Center, Holtsville, N.Y., on November 27, 1972. An unsigned joint Federal income tax return for the taxable year 1973 was filed with the Director of the Brookhaven Service Center on June 5, 1975. A signed copy of the 1973 return was filed on July 11, 1975. Beginning in October 1970 and continuing through the taxable years at issue John was employed by the Wonderful World of Horses as the vice-president, producer, and general manager of the Royal Lippizan Stallion Show, a traveling unit. He was paid approximately $ 750 per week during 1971 and 1973. During 1971 and 1973 Dawn was employed by the Wonderful World of Horses as an assistant to her husband. She was paid approximately $ 150 a week. None of their expenses were reimbursed by their employer with the exception *95 of expenditures for gasoline for one vehicle. Their employer believed that the compensation paid them was sufficient to cover the expenses they incurred except for gasoline and veterinary expenses for the horses. During the taxable years at issue the Finleys traveled with the show on its tour throughout the United States, Canada, and Mexico. The tour visited approximately 105 cities in 1971 and 121 cities in 1973. Although the Finleys were on tour for a significant part of 1971 and 1973, they maintained a personal residence in Norwood, N.J., to which they returned for 6 or 7 weeks out of each year. While on tour the Finleys traveled in their personal mobile home. During 1971 the Finleys owned at different times two mobile homes, both Winnebagos. They also owned a Volkswagen which they used for local transportation in cities where the shows were being presented. Their mobile home also was used as an office and was te only office available to the employees while on tour. In cities where the mobile home could not be located near the show the Finleys lived and worked in hotels. During the taxable years at issue petitioners did substantial entertaining while on the road in *96 order to generate interest in the show and repeat bookings. On their 1971 return the Finleys deducted the following as ordinary and necessary business expenses: Description
Amount
Meals
$ 11,583.00
Hotel lodging
825.00
Producer's laundry
1,404.00
Assistant producer's laundry
526.50
Telephone
1,053.00
Entertainment
8,775.00
Dues and subscriptions
500.00
Gasoline, oil, etc.
2,800.00
Repairs
1,100.00
Tires, supplies, etc.
400.00
Insurance
400.00
Interest
649.96
Licenses
52.00
Depreciation
6,289.00
Total expenses
$ 36,357.46 [3]
On their 1973 return they deducted the following as ordinary and necessary business expenses: Description
Amount
Meals on road
$ 11,200.00
Hotel accommodations
1,125.00
Laundry expenses
2,150.00
Telephone
1,100.00
Dues and subscriptions
525.00
Entertainment and advertising
6,325.00
Insurance
500.00
Tires
810.00
Oil changes
180.00
Depreciation
7,595.78
Licenses
52.00
Wash and waxing
665.00
Propane
420.00
Parking
75.00
Total expenses
$ 32,722.78
*97 During the taxable years at issue the Finleys did not maintain a diary nor did they retain any receipts, paid bills, or similar documents substantiating the above expenses. They did, however, maintain itineraries reflecting the dates and places where the show performed for both 1971 and 1973. The amounts reflected on their returns were based on estimates of what their expenditures for the various categories should have been in those years. The Finleys claimed John's mother, Theresa, as a dependent on their retrns for the taxable years at issue. The Finleys contributed approximately $ 1,380 toward her support in 1971 and $ 4,200 toward her support in 1973. Theresa was about 90 or 91 years old in 1971. She lived in a retirement hotel in 1971 and in a nursing home in Washington, D.C., in 1973. Theresa was unemployed during the taxable years at issue, but she was receiving an unspecified amount of Social Security. Although some of the checks from the Finleys were payable to John's sister, these amounts were for Theresa's support. Theresa received no income from any other source. On their returns for 1971, in addition to the interest in the amount of $ 649.46 claimed as *98 a business expense, petitioners' claimed as an itemized deduction $ 2,366.36 as interest paid during the taxable year, representing $ 1,273.10 interest paid on a mortgage on their home and $ 1,093.26 as interest paid on "installment purchases." Respondent has conceded that petitioners are entitled to a deduction in the amount of $ 1,387.76 as interest paid on the home mortgage. Petitioners also paid $ 555.63 as interest on a note executed to finance the purchase of the mobile home. [4]
*99 Although the Finleys believed that a request for extension of time to file their return for 1973 was filed they did not know if it was granted. Their return was filed late because they had changed accountants and he had made some sort of error and because they did not have the time to get to it. OPINION As respondent recognizes on brief, the question in this case is not whether petitioners incurred ordinary and necessary business expenses during the taxable year at issue. It is apparent from the record that some unreimbursed expenses deductible pursuant to section 162(a) and (a)(2) [5] must have been paid by the Finleys. Rather, petitioners' problems center upon their burden of proof, especially the substantiation requirements of section 274(d). Section 274(d) provides that: *100 (d) * * * No deduction shall be allowed-- (1) under section 162 * * * for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation or with respect to a facility used in connection with such an activity * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation or use of the facility, * * * (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of the persons entertained [or] using the facility, * * *. It is clear that the expenditures claimed by petitioners for meals, lodgings, laundry and parking are deductible, if at all, under section 162(a)(2), and that those expenditures, together with claimed expenditures for entertainment, fall within the purview of section 274(d). Consequently, any reliance upon the approximation rule of Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930), *101 for those expenditures is foreclosed.Sec. 1.274-5(a), Income Tax Regs. Furthermore, there is no evidence that the expenditures for dues and subscriptions were related to petitioners' business or that they were expenditures that would normally be incurred in petitioners' type of business, so the Cohan rule cannot be relied on to allow any part of those claimed expenditures. That petitioners have failed to comply with section 274(d) is an inescapable conclusion. No documentary substantiation of any kind with regard to these expenditure was maintained by petitioners during the taxable years at issue. Furthermore, no competent evidence was introduced which corroborates with any specificity the Finleys' testimony concerning the basis upon which they estimated their expenditures. The only documentary evidence offered were itineraries, prepared by petitioners, purporting to reflect the dates and places where shows were performed during the years in issue. Mileage between locations is not shown. Petitioners' argument that similar amounts were deducted on their returns for 1974 and 1976 is entitled to little, if any, weight. The return for 1974 was not introduced as evidence. The *102 revised report of income tax audit changes allowing $ 21,179.35 of $ 25,414.67 claimed business expenses is irrelevant without the return and the basis upon which the report was made. The 1976 return on which employee business expenses of $ 20,439 were claimed has not been audited. Moreover, John testified that records were maintained by him to substantiate the expenses claimed on this return. This statement belies petitioners' contention that the nature of these jobs made adequate record keeping almost impossible. We are constrained by this absence of adequate substantiation to uphold respondent's disallowance of those categories of business expense deductions set forth above. However, the remaining categories of claimed business expenses are subject to a different scrutiny. The interest expense claimed in 1971 as a business expense is not subject to the requirements of section 274(d). Sec. 274(f). Nor are the interest expenditures claimed as itemized deductions on the return. Sec. 163(a). Our findings of fact reveal that, in addition to the interest on the home mortgage conceded by respondent, petitioners paid $ 555.63 interest on the notes executed to purchase their *103 mobile homes. Although petitioners could not produce exact records showing dates of payment, we are satisfied that this amount was paid during 1971. Commercial reality and our faith in the Finleys' credibility are sufficient to establish payment. However, there is nothing in the record to prove that any more than $ 555.63 interest was paid on "installment purchases" or as business expense, so respondent's disallowance of deductions for interest in excess of the amount conceded and the $ 555.63 mentioned above is sustained for failure of proof. The expenses estimated for telephone, operation and maintenance of their vehicles, insurance, licenses and depreciation may be examined under sections 162(a) and 167 without regard to sections 162(a)(2) and 274(d). Clearly some portion of these expenses was incurred in pursuit of petitioners' trade or business and is deductible as such. However, the amount of allowable deductions is circumscribed by the payments by petitioners' employer for gasoline on one of their vehicles and by the fact that the telephone and vehicles were used for personal as well as business reasons. Furthermore, these expenses are based upon estimates with little *104 or no substantiation. Based upon our examination of the record, however, and taking into account these factors, we believe that a fair approximation of these other business expenses mentioned in this paragraph would be $ 4,500 in 1971 and $ 5,500 in 1973. Petitioners are entitled to deductions for those amounts as business expenses for the respective years. Petitioners' claim for an exemption for John's mother on their returns for the taxable years at issue also is plagued by the problem of inadequate proof. Petitioners must establish that John's mother received more than half of her support during those taxable years from petitioners, sec. 152(a)(4), and that her gross income was less than $ 675 in 1971 and $ 750 in 1973. Sec. 151(e)(1)(A). [6] The record reveals that Teresa Finley was receiving Social Security during 1971 and 1973 in addition to the checks received from the Finleys. Since Social Security is not included in gross income for purposes of the maximum income allowable under section 151(e)(1)(A), see sec. 1.151-2(a), Income Tax Regs.; Rev. Rul. 7-217, 1970-1 C.B. 13, superceding I.T. 3447, 1941-1 C.B. 191, and Theresa had no other income, *105 the requirements of that section are met. However, the Social Security payments must be taken into consideration in determining whether petitioner provided more than one-half of the mother's support. Rev. Rul 58-419, 1958-2 C.B. 57. [7] Since petitioners presented no evidence of the total amounts of Social Security received by the mother in those years it is impossible to make this determination with any degree of certainty. Our findings of fact reflect that petitioners contributed only $ 1,380 to the support of Theresa during 1971 but that they contributed $ 4,200 for her support in 1973. We will not speculate that the $ 1,380 contributed in 1971 was more than the amount of Social Security Theresa received in that year, and hence we uphold respondent's disallowance of the exemption for 1971. However, we believe we would be closing our eyes to reality not to conclude that the $ 4,200 the petitioners *106 paid for Theresa's support in 1973 did not constitute more than 50 percent of the total amount spent for her support in that year. We are informed that the maximum Social Security payments that a single person could have received in 1973 was slightly more that $ 4,200. But petitioners' testimony indicates that Theresa earned wages subject to Social Security coverage for only 10 to 12 years during the 1950's, when she was in her 60's, and it seems unlikely that she would have been entitled to the maximum payments. Also during 1973 the $ 350 per month that petitioners paid was apparently the cost of keeping Theresa in a nursing home which provided most of her needs, so it is reasonable to assume that at least a part of the Social Security received by Theresa was used for something other than her support. We therefore conclude that petitioners paid more than one-half of Theresa's support in 1973 and are entitled to an exemption for her for that year. Finally, we agree with respondent that an addition to tax pursuant to section 6651(a)(1) and (2) [8] for the taxable year u973 is properly imposed. Petitioners did not file their 1973 return until June 5, 1975. [9] The only explanations *107 proffered by the Finleys for the delay were the hiring of a new accountant and his making an error of some kind, the pressures of being on the road, and carelessness. These excuses do not establish reasonable cause as required by statute. [10]
*108 Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue, unless otherwise indicated.↩
2. Respondent conceded at trial that petitioners are entitled under section 163, I.R.C. 1954↩, to deduct $ 1,387.76 representing interest paid by them on their home mortgage.
3. As stipulated. The notice of deficiency for 1971 disallowed only $ 36,257.46 of these deductions, which also appears to be the amount claimed on the return for 1971.↩
4. The Finleys executed a note to the National Bank of Commerce of Charleston on December 10, 1970, in which they promised to repay the bank $ 8,620.25 plus $ 1,422.34 interest in 36 months. Thus, the interest was approximately $ 39.51 per month. The Finleys paid this amount for approximately 9 months in 1971 for a total of $ 355.59. The principal was paid in full on September 23, 1971. On September 4, 1971, the Finleys executed another note with th bank in order to purchase a new mobile home. They promised to repay $ 16,003.40 plus $ 2,400.52 in 36 months, payments commencing on October 20, 1971. The interest was approximately $ 66.68 per month. Hence, the Finleys paid about $ 200.04 interest on this note in 1971. The only interest claimed on the 1973 return was claimed as an itemized deduction. Since respondent appears to have disallowed for 1973 only the amounts claimed as business expenses there appears to be no dispute with regard to interest in 1973.↩
5. Sec. 162(a)(2) provides: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances)while away from home in the pursuit of a trade or business; * * *↩
6. The difference in amounts required to be established for purposes of section 151(e)(1)(A) is due to amendments to the section affecting the taxable years at issue. P.L. 92-178, sec. 201(a)(1) and (b)(1). ↩
7. Black v. Commissioner,T.C.Memo. 1972-135↩.
8. Sec. 6651(a)(1) and (2) provides in pertinent part: (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof) * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.
(2) to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate * * *. ↩
9. Although there is testimony that an extension of time to file was requested for this return, the Finleys could not recall whether the extension was granted. Moreover, as respondent notes, the return would not have been timely filed even if the extension had been granted. See sec. 6081(a).↩
10. Cf. Halling v. Commissioner,T.C. Memo. 1968-232↩.